IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HELEN D. MITCHELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:03-cv-2634-TMP |
| | ) |
| HOUSING AUTHORITY OF THE | ) |
| BIRMINGHAM DISTRICT, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This cause is before the court on the motion for summary judgment filed by the defendant, the Housing Authority of the Birmingham District ("HABD") on August 30, 2004. Defendant seeks dismissal of all of plaintiff's claims based on the Age Discrimination in Employment Act ("ADEA") because, defendant contends, there is no genuine issue as to any material fact and defendant is entitled to judgment as a matter of law. This matter has been fully briefed and this court has considered the evidence and the arguments set forth by both parties. The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c); accordingly, the court enters this memorandum opinion.

**I. SUMMARY JUDGMENT STANDARD**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need

not be given the benefit of every inference but only of every reasonable inference. <u>Brown v. City of Clewiston</u>, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II.  FACTS FOR SUMMARY JUDGMENT PURPOSES

Plaintiff Helen D. Mitchell, who is more than 40 years old, brought this action pursuant to the ADEA, 29 U.S.C. § 621 *et seq.,* alleging that the HABD refused to hire her because of her age.[1] Applying the above-described standards, the following facts appear to be undisputed or, if disputed, are taken in a light most favorable to the non-moving plaintiff.

Plaintiff's discrimination claims arise from her association with HABD, where she was placed as a temporary employee by ProStaff ("the agency"), an agency that supplies temporary workers.[2] Mitchell's work history before her temporary assignment to the HABD included six years of work as an administrative assistant for Southern Natural Gas Company, more than a year as a marketing assistant for Sonat Energy Services, and about two years as a senior office assistant at El

---

[1] Mitchell has made some references in her deposition and brief in opposition to summary judgment to her "termination" from the HABD position, but it is clear that her claim revolves around the HABD's failure to hire her for the positions for which she applied. Because she worked as a temporary employee, the hiring of a permanent employee for the position she held was always anticipated. The court does not consider the fact that the newly-hired permanent employees replaced her as creating a separate cause of action distinct from her claim that she should have been hired for the various positions. The conduct of which Mitchell complains is that the HABD placed a younger, less-qualified worker into the position held on a temporary basis by Mitchell. Mitchell names three positions for which she alleges she should have been hired, but as discussed *infra*, two of those employment actions are time-barred. Thus, the claim at issue here is best labeled a failure-to-hire, not a termination claim.

[2] The name of the employer is not provided by either party in the relevant briefs, but both parties agree that Mitchell was, at all relevant times, an employee of the temporary agency, and was never an employee of HABD..

Paso/Southern Natural Gas. Mitchell holds a bachelor's degree in general business from Samford University, with a minor in paralegal studies.

In August 2001, Mitchell was assigned by the agency to work at the HABD in the legal department as a clerical worker. Mitchell described her duties as answering phones and keeping files on rent payments. (Mitchell Depo., pp. 31-32.) Mitchell reported directly to Naomi Truman, General Counsel at the HABD. After she had been working at the HABD offices for about 14 months, Mitchell filled in as a paralegal when the HABD's paralegal was out for two months due to illness in the autumn of 2002. During that time, her duties were to "type contracts and send them out for review and signature" and to handle requests for information on rent and to accept rent payments. (Mitchell Depo., pp. 36-38.) Truman frequently complimented Mitchell's work, and there is no dispute that Mitchell performed well in her duties at the HABD.

Mitchell wanted to obtain a permanent position at the HABD. Jobs at the HABD were filled in the following manner, according to Patricia Carter, Human Resources Director. The positions were posted in several locations throughout the HABD offices. Those who sought the job had to fill out an application and/or submit a resume. Human Resources personnel screened the applicants to determine whether they met the minimum requirements of education, training, and experience. A list of qualified applicants was submitted to the hiring official, and that official then conducted interviews and recommended an applicant for hiring, or decided that the position would not be filled by any available applicant and that the job should be re-posted.

During the time that Mitchell was assigned to Truman's department, she applied for three permanent positions at the HABD. The first position Mitchell sought was that of Executive

Secretary of Housing Management. Mitchell applied on August 13, 2001, after Truman informed her of the opening.[3] In September 2001, Mitchell interviewed for the job with the hiring official for that position, Jimmie Lacey, Director of Housing Management. Mitchell was notified by letter dated October 1, 2001, that the position was not going to be filled at that time, but that it would be re-posted at a later date and that she could be reconsidered by filing another application for the job. The job was re-posted on March 25, 2002, but plaintiff did not re-apply.[4] The position was offered to Sandra Kidd on or about May 9, 2002, and Kidd accepted the job on May 13, 2002. Kidd was then under 40 years of age.

The second job for which Mitchell applied was the position of Paralegal. Truman notified Mitchell of the Paralegal position on August 10, 2001. Mitchell applied for the position on August 20, 2001. The Human Resources Department determined, based on her application, that Mitchell was not qualified for the position. Although Mitchell asserts that she was "qualified" for the job because she had a minor in paralegal studies, the HABD asserts she was not qualified because she did not have a bachelor's degree in paralegal studies and had not worked as a paralegal. (Carter Depo., pp. 26-27.) Mitchell does not dispute that she does not have a bachelor's degree in paralegal studies or that she has never worked as a paralegal, but does assert that her education and experience were adequate for the position. Mitchell's name was not included on the list of qualified applicants

---

[3] Although Mitchell learned of the opening through Truman, who provided the information just after Mitchell began her work assignment at the HABD, the parties agree that the job notice also was posted at three locations in the workplace.

[4] Mitchell testified that she never saw the position re-posted. The HABD asserts that the job was re-posted in March 2002, and there is no evidence disputing that fact.

that was submitted to Truman, the hiring official for that position. Accordingly, Mitchell was not given an interview for the position.[5] In September 2001, the HABD hired Ansonya Grayson, who was then under age 40.

On December 17, 2001, the HABD posted a notice that it would be hiring a Legal Administrative Assistant. Mitchell applied on the same date. The posting stated a salary range of $26,295.29 to $32,038.26.[6] Mitchell met the qualifications for the position, and Truman interviewed Mitchell for the job on June 4, 2002.[7] At the interview, the salary range was discussed. Mitchell was asked how much pay she would accept, and she answered $29,000. (Mitchell Depo., pp. 88-90).[8] After the interview, Truman told Mitchell that she "wanted her as part of the team" but that her salary requirement was an obstacle. Mitchell never stated that she would accept the job for less than $29,000. Truman has testified that she believed that Mitchell would not accept the position for less than $29,000. Truman re-posted the job opening. Mitchell received a letter in October 2002 informing her that the job was going to be re-posted, and she would be required to submit a new application if she wished to apply. (Mitchell Depo., pp. 110-12.) Truman personally told Mitchell

---

[5] This issue is not addressed further because, as explained *infra*, Mitchell's claim related to the paralegal position is time-barred.

[6] Although the numbers posted indicated a range for the entry-level salary, Truman has testified that she intended to hire an assistant at the bottom of the range because she had other employees in the office who were earning little more than that amount and she felt that hiring a new assistant at a higher salary would cause morale problems.

[7] It is not clear from the record why there was a six-month gap between the posting of the job and the interview.

[8] Truman and others present at the interview stated that Mitchell said she would not take the job for less than $29,000 per year, but Mitchell has denied saying that the $26,000 minimum was not acceptable.

that there was "nothing wrong" with her or her work, but that she was going to "re-post the position" because Mitchell was "firm on the salary." (Id. at 113.) Mitchell did not tell Truman that she would accept the job for less than $29,000.

The job was re-posted on October 17, 2002. Mitchell did not re-apply or further inquire about the position or salary. Mitchell saw the position re-posted at work and saw that the minimum salary range had been increased to $27,215.63. Mitchell testified that she chose not to re-apply because the salary still was less than the $29,000 she required.[9] In November 2002, interviews were held. Sandra Billups, who is younger than 40 years of age, was offered the position in January 2003 at $27,215.63, at the lowest end of the entry-level salary scale.[10]

On or about January 14, 2003, Truman informed Mitchell that she was discharged from her position as a temporary worker. The HABD has a practice of releasing temporary workers from their positions before newly-hired permanent employees arrive on the job. Billups accepted the position of Legal Administrative Assistant and began work at the HABD on or about February 17, 2003.

Mitchell has stated that the only age-related comment ever made by anyone at the HABD was that Truman told her she liked her "maturity" and wanted her to remain in the legal department.

On March 21, 2003, Mitchell filed a charge with the Equal Employment Opportunity Commission. She alleged that she was "discharged in violation" of the ADEA in that a younger

---

[9] Although Mitchell argues that she still was interested in the job, she does not dispute that she made a knowing decision not to re-apply for the job on the basis that the starting salary was lower than her demand.

[10] The lowest amount of the entry-level salary was increased slightly from the amount offered the first time the position was posted, but the defendant has demonstrated that the increase was due to a cost-of-living increase.

person was hired to fill the position of Legal Administrative Assistant. In an EEOC questionnaire, Mitchell stated that she had applied for three positions at the HABD — Executive Secretary, Paralegal, and Legal Administrative Assistant — and that she was denied the positions in favor of younger applicants. Mitchell received a right-to-sue letter on July 8, 2003, and filed the complaint commencing this action on September 25, 2003.

### III. DISCUSSION

#### A. Timeliness

The defendant asserts that all of plaintiff's claims except her claim related to the position of Legal Administrative Assistant are time-barred. The HABD asserts that the two other hiring decisions plaintiff challenges were made more than 180 days before Mitchell filed her EEOC charge on March 21, 2003, and are due to be dismissed as untimely pursuant to 29 U.S.C. § 626(d)(1).

The plaintiff argues in her brief in opposition to the motion for summary judgment that the charge is timely because there was "little or no back pay at issue" when she was rejected from the executive secretary and paralegal positions, so a discrimination case "would have been pointless." (Plaintiff's Brief, p. 4.) She further asserts that the hiring of Billups was "the event which confirmed the HABD's pattern of preferring younger employees in the Legal Department." (Id.)

The court finds plaintiff's arguments unavailing. It is well settled that a failure to hire, unlike an ongoing hostile environment based on sex, race, or age, is a "discrete act" that gives rise to a cause of action under federal employment statutes such as Title VII or the ADEA. See, e.g., National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 110, 122 S. Ct. 2061, 153 L. Ed. 2d 106

(2002), citing 42 U.S.C. § 2000e-2(a)("It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual ..."). A "discrete act," such as a failure to hire, occurs for purposes of the filing of an EEOC charge "on the day that it 'happened.'" Morgan, 536 U.S. at 110.

The plaintiff simply states that she had suffered minimal damage before she was discharged, and that the third time the defendant failed to hire her for a permanent position demonstrated a pattern. It is not clear whether the plaintiff is asserting that she was unaware of the discrimination until January 2003, or whether the incidents created a "continuing violation." See, e.g., Roberts v. Gadsden Mem. Hosp., 835 F.2d 793 (11th Cir. 1998). In any event, plaintiff cites no authority for the contention that the cause of action did not accrue until the third act. Neither does plaintiff support the proposition that the "continuing violation" doctrine, which has been applied frequently in the context of Title VII hostile environment cases, also applies to a series of incidents in which an employer fails to hire an applicant who is a member of a group protected by the ADEA.

To the contrary, it is well established that the "proper focus" for an examination of the statute of limitations in an age-discrimination case is the time of the discriminatory act. See Jones v. Dillard's, Inc., 331 F.3d 1259, 1266 (11th Cir. 2003). The limitations period for an age claim under the ADEA begins to run when the employee becomes aware that she is being replaced by a person outside the protected age group. See Hargett v. Valley Fed. Savings Bank, 60 F.3d 754, 760-61 (11th Cir. 1995).[11] The time period may be equitably tolled in cases where a defendant actively

---

[11] Although Hargett discusses "replacement" in the context of an age claim by a plaintiff who was laid off, it is analogous to the situation at bar, in which the job plaintiff applied for was awarded to a person who is not in the protected age group. The analogy is especially appropriate here,

misrepresents the reason for a hiring decision, or where the plaintiff had no reason to know of the discrimination. See, e.g., Jones, 331 F.3d at 1265-67, and cases cited therein (noting that a party that wrongfully conceals facts is estopped from asserting the statute of limitations as a defense). Plaintiff, however, does not allege that such circumstances existed in this case. The court, therefore, finds that the claims related to the failure to hire plaintiff as Executive Secretary and Paralegal are time-barred.[12]

Further, insofar as she asserts that the third instance of failing to hire her established a pattern of discrimination she could not have discerned earlier, the undisputed facts point to a different conclusion. The three instances of failing to hire the plaintiff are were not similar. Although there is no real explanation for failing to hire her as an executive secretary, she was not qualified for the paralegal position, and her salary demands were too high for the legal assistant position. Other than plaintiff no successfully obtaining the jobs, there is no pattern, and certainly not one that supports an inference of illegal discrimination. As such, there is no basis for dispensing with the requirement that she timely file her charges of discrimination with respect to the first two instances of failure to hire.

---

because plaintiff was performing the job of legal administrative assistant on a temporary basis and was "replaced" by Billups, who was hired as a permanent employee.

[12] The court further notes that the plaintiff's claim relating to the hiring of the executive secretary also is barred because the plaintiff failed to apply for the position when it was re-posted. The defendant cannot be liable for failing to hire plaintiff for a job for which she failed to apply.

11

**B.  *Prima Facie* Case**

Plaintiff's only timely claim (failure to hire her for the legal assistant position) arises from the ADEA, which prohibits an employer from using the employee's age as a "determining factor" in an adverse employment decision.  Zaben v. Air Products & Chemicals, Inc., 129 F.3d 1453, 1457 (11th Cir. 1997).  In order to survive a motion for summary judgment, the plaintiff in an age discrimination case first must establish a *prima facie* case by demonstrating that she: "(1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual.  Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000).  A plaintiff may accomplish this *prima facie* showing by presenting to the court: (1) direct evidence that "discriminatory animus played a significant or substantial role in the employment decision," Eskra v. Provident Life and Accident Insurance Company, 125 F.3d 1406, 1411 (11th Cir. 1997), or (2) circumstantial evidence of discrimination, in accordance with the four-part test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed. 2d 668 (1973), or (3) statistical evidence of a pattern of discrimination.  Zaben, 129 F.3d at 1457.

Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without requiring the fact-finder to make any inferences or presumptions.  Carter v. City of Miami, 870 F.2d 578, 580-81 (11th Cir. 1989).  When the plaintiff relies upon circumstantial evidence, rather than direct evidence, she creates a presumption of discrimination by establishing a *prima facie* case.  The presumption may be rebutted, however, if the employer offers a legitimate, nondiscriminatory reason for the employment action.  Once the nondiscriminatory

reason is articulated, the burden shifts to the plaintiff to show that the reason is either not worthy of belief, or that, in light of all the evidence, a discriminatory reason more likely motivated the decision than the proferred reason.  Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1331-33 (11th Cir. 1998) reh'g and reh'g en banc denied, 172 F.2d 884 (11th Cir. 1999), citing Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997), cert. denied, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998).

Essentially, the court must determine whether the plaintiff has presented competent admissible evidence that the HABD did not offer Mitchell the position of Legal Administrative Assistant because of her age.  United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715, 103 S. Ct. 1478, 1482, 75 L. Ed. 2d 403 (1983).  It is not the duty of this court to evaluate whether the decision not to hire Mitchell was fair or wise; employers are free to make unfair or unwise employment decisions so long as they do not violate anti-discrimination statutes such as the ADEA.  See Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1470 (11th Cir. 1991).  Questionable business judgment is not evidence of discrimination.  Id.

### 1. Direct Evidence

Mitchell offers some evidence that the court construes as an attempt to prove an ADEA violation by direct evidence.  As direct evidence of discrimination, Mitchell states that Truman, the decision-maker in the hiring at issue, told her that she liked Mitchell's "maturity."  Mitchell offers no support for any assertion that this statement proves that Truman's decision to hire the younger applicant was the product of an unlawful intent to discriminate, as necessary under the holding of Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1329 (11th Cir. 1998).  Furthermore, Truman's remark is, on its face, a compliment.  To construe the statement as an indication of age-based animus

requires at least two inferences: first, that the statement is sarcastic or facetious and not a truthful statement and, second, that Truman based her decision not to hire Mitchell on her "maturity." Because an inference is required, the evidence falls short of the direct evidence standard. At worst, the statement is ambiguous because it could (and the evidence demonstrates that it did) express Truman's appreciation for plaintiff's work experience and manner of conducting herself in the workplace. On its face, the statement is "untainted by unlawful age bias," and cannot constitute direct evidence of age discrimination under the analysis set forth in Dilla v. West, 4 F. Supp. 2d 1130, 1140 (M.D. Ala. 1998).

Furthermore this sole statement, in the context of Mitchell's extensive work relationship with Truman, must be viewed as no more than an isolated or "stray remark" that cannot be deemed probative of discriminatory intent. See, e.g., Dilla v. West, 4 F. Supp. 2d 1130, 1140 (M.D. Ala. 1998); Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1329 (11th Cir. 1998). This single statement is woefully insufficient as direct evidence to prove that Mitchell's age was a determinative factor in the challenging hiring decision.

### 2. Circumstantial Evidence

Mitchell also attempts to prove that the HABD discriminated against her by providing circumstantial evidence that the HABD's decision not to hire her as the Legal Administrative Assistance was violative of the ADEA. Plaintiff has failed to meet the initial burden required by Eleventh Circuit precedent. She has demonstrated that she was within the protected group of employees 40 years of age or older, that she was not hired, and that a younger person was hired to

fill the position. However, plaintiff has failed to show that she was "qualified" for the position of Legal Administrative Assistant. See Williams v. Vitro Servs. Corp., 144 F.3d 1438 (11th Cir. 1998).

The defendant has demonstrated, and plaintiff does not dispute, that the HABD policy required all applicants to re-apply for any position by submitting a resume and/or application each time the job was posted. The evidence shows that the HABD did not consider applicants who applied for the job on an earlier occasion to be "re-considered" on a subsequent posting of the position without having re-applied.[13] Furthermore, it is clear that the HABD specifically told plaintiff she must re-apply for the position, and that plaintiff understood that instruction.[14] Accordingly, the HABD has shown that a failure to properly re-submit an application and/or resume rendered an applicant "unqualified" for a position; consequently, plaintiff has failed to demonstrate an essential element of her *prima facie* case.[15] See Smith v. J. Smith Lanier & Co., 352 F.3d 1342, 1345 (11th Cir. 2003) ("A general interest in being rehired without submitting an application is not enough to establish a *prima facie* case of age discrimination when the defendant-employer has publicized an open position.").

---

[13] Although plaintiff asserts that a successful applicant had not filled out an application form for the re-posted position, she does not dispute that the applicant had submitted a resume for the re-posted job, and she does not dispute that such submission was deemed a "re-application" by the HABD.

[14] Even if the plaintiff's claim regarding the HABD's failure to hire her for the Executive Secretary position were not time-barred, it would be due to be dismissed for this same reason. Plaintiff admits she did not re-apply for that position when it was re-posted, even though the HABD human resources department informed her that she must re-apply to be considered.

[15] Plaintiff has not offered or attempted to offer any statistical data that might show that the HABD engaged in age discrimination.

**C.  Pretext**

Even if plaintiff has met her burden in presenting a *prima facie* case of age discrimination, giving rise to a presumption of discrimination, that presumption has been rebutted because the HABD has articulated a legitimate, nondiscriminatory reason for its failure to hire Mitchell as Legal Administrative Assistant.  Truman, the decision-maker, testified that she believed that Mitchell would not accept the job at the salary Truman was willing to offer.  It is undisputed Mitchell told Truman she wanted to be paid $29,000 per year to accept the position.  Even though Mitchell now argues that she would have accepted the job for less than $29,000 per year, there is no evidence that Truman did not honestly believe the salary obstacle was insurmountable.  In fact, Truman gave Mitchell at least one opportunity to express continued interest in the job or to clarify whether she would accept the job at the salary Truman was willing to pay.  Even if Mitchell's response to Truman's inquiry resulted in a miscommunication or misunderstanding on one or both sides, none of the evidence suggests that the HABD's articulated reason was not the "real reason" Mitchell was not hired.

The burden is on the defendant merely to articulate the non-discriminatory reason, not to persuade the court that it was "actually motivated" by the articulated reason.  See, *e.g.*, Chapman, 229 F.3d at 1023.  Once the defendant has done so, the plaintiff has the burden of coming forward with evidence "sufficient to permit a reasonable fact-finder to conclude that the reasons given by the employer were not the real reasons" for the adverse hiring decision.  Id. at 1024.

Because the HABD has offered a non-discriminatory reason for the hiring decision, Mitchell must, in order to overcome the HABD's motion for summary judgment, demonstrate by competent,

admissible evidence that the non-discriminatory reason is merely a pretext and that the true reason is age-based discrimination. The reason given by the employer "cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1993). The plaintiff does not make any showing that the reason given is a pretext. Both Mitchell's stated salary requirement and the fact that Mitchell did not reapply are undisputed. A finding of pretext is appropriate where the plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's articulated reason for the employment action that it is "unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997)(citations omitted).

The court finds no support for plaintiff's argument that Truman's stated reason is a pretext. Plaintiff has not shown that Truman actually was willing to pay $29,000 for the position or that Truman knew Mitchell would accept the job for the lower pay that was offered. Furthermore, plaintiff has not shown that the HABD did not observe its own rule that applicants must re-apply for re-posted openings. In short, Mitchell has failed to meet her secondary burden of showing that the HABD's stated reason for failing to hire Mitchell was pretextual, and Mitchell's claim of age discrimination is subject to summary adjudication in favor of the HABD under the McDonnell Douglas test as adopted by the Eleventh Circuit. Williams, 144 F.3d at 1441.

For all of these reasons, the plaintiff has failed to demonstrate that the defendant failed to hire her on the basis of her age. The HABD's motion for summary judgment is due to be granted.

## IV. **CONCLUSION**

Based on the foregoing undisputed facts and legal conclusions, the court determines the motion for summary judgment filed by the HABD is due to be GRANTED and this action DISMISSED WITH PREJUDICE.

A separate order will be entered in accordance with the findings set forth herein.

DATED this 28th day of February, 2005.

_____
T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE